### GRIFFIN et al. v. LANGE CO.

No. 23690. Jan. 29, 1935.

Alger Melton and Adrian Melton, for plaintiffs in error.

L. A. Wood and D. M. Cavaness, for defendant in error.

PER CURIAM. This action was commenced in the district court of Grady county, Okla., on the 29th day of January, 1930, by defendant in error, the Lange Company, a Wisconsin corporation, as plaintiff, against plaintiffs in error, J. P. Griffin, M. J. Manning, and J. N. Brewer, as defendants. Designations will be the same hereinafter.

Plaintiff alleged it is a corporation organized under the laws of the state of Wisconsin, with power to manufacture, sell, and deal in medicines, extracts, spices, soaps, toilet articles, stock and poultry preparations, and other and like preparations, and with its principal place of business at De-Pere, Wis. It is further alleged that plaintiff and defendant J. P. Griffin entered into a written contract, dated the 25th day of October, 1927, whereby plaintiff agreed to sell, and said defendant agreed to purchase from plaintiff at DePere, Wis., goods, wares, and merchandise, to be manufactured by plaintiff and delivered to the said defendant f. o. b. cars at DePere, Wis. It is further alleged that at the time of entering into said contract, the defendants M. J. Manning and J. N. Brewer, for a good and valuable consideration, by their agreement in writing, did jointly and severally, and unconditionally, promise and agree and guarantee to pay, and did insure payment for said goods, wares, and merchandise; a copy of the contract with defendant Griffin, and the other defendants, was attached to the petition as an exhibit; there was also attached to the petition a verified itemized statement, showing a balance claimed to be due and unpaid to plaintiff in the sum of $342.81, for which amount, with interest from the 1st day of May, 1928, plaintiff prayed for judgment against the defendants and each of them.

The part of the contract material to this controversy provides that plaintiff shall sell and deliver to defendant Griffin f. o. b. cars at DePere. Wis., in such reasonable quantities as the said defendant may from time to time require for sale in Kiowa county, Okla., goods, wares, and merchandise at the customary wholesale prices at which the same are sold by plaintiff to other customers in similar localities, such prices to be shown by invoices of such shipment; such prices subject to change upon notice by plaintiff to defendant. Defendant agrees to purchase the goods reasonably required by him as aforesaid, and promises and agrees that if he does not pay cash for any of such goods, to make said company complete regular written reports, as required by plaintiff upon forms furnished by it; and defendant promises and agrees to pay to the plaintiff the wholesale prices aforesaid for the goods sold to him from time to time, and at the termination of the contract to pay the whole amount thereof remaining unpaid. The parties agree that plaintiff shall credit the defendant on his account

with one-half of all freight bills paid by him on freight shipments to him from plaintiff.

The contract further provides that defendant shall pay all expenses and obligations incurred in connection with the sale of merchandise which he purchases from plaintiff; that defendant shall not have power or authority to make any statement, or representation, or incur any debt or liability of any kind whatsoever in the name of or on account of plaintiff; and that the plaintiff shall in no way contribute to the payment of the expense, or share in the profits or losses from the sale of the goods by the defendant, or have any interest in the accounts due for goods sold by him to his customers; and that no correspondence, printed advertising, or other matter of the plaintiff sent to defendant or distributed by plaintiff shall be construed to direct or control the sale or other disposition of said goods, or to change or modify the terms of the contract.

It is further provided that either plaintiff or defendant may terminate the contract at any time by giving the other party notice by mail, and that any indebtedness then owing by either party to the other shall thereupon be and become immediately due and payable.

The defendants united in a joint answer, in which, in addition to an unverified general denial, it is admitted that plaintiff is a foreign corporation; it is charged that plaintiff is doing business in Oklahoma in violation of the laws pertaining to foreign corporations; it admits that the defendant Griffin executed the contract, and the other defendants executed the guaranty, but contends that the guaranty and the contract are not valid and binding for the reason that plaintiff was transacting its business in violation of what is known as the Sherman Anti-Trust Law (15 USCA sec. 1, et seq.), in that plaintiff's business was the sale of articles described in the contract at wholesale prices to various agents located in the state of Oklahoma, and that, under its contract, the articles were sold and delivered to its agents with the express agreement and understanding that the plaintiff would and did control and regulate the wholesale and retail prices of the articles contracted to be sold; that the agreement with reference to plaintiff fixing the prices at wholesale and retail was oral and entered into prior to the

25th day of October, 1927, and not embraced within the terms of the written contract; it is further alleged that the written contract does not express the full agreement of the parties, in that it provides that plaintiff will credit the defendant Griffin with one-half of all freight bills paid by him, which provision was not carried out by either party; that there was a separate and distinct understanding, which when fully carried out amounted to a prepayment of the freight on all articles shipped by the plaintiff, and said articles were in fact delivered to the defendant Griffin under said contract of sale at their destination, free of any freight charges of any kind, and that the provision in the contract to the effect that the defendant was to pay the freight charges was solely for the purpose of avoiding the statutes in force in the state of Oklahoma with reference to the sale of merchandise within the state of Oklahoma.

The plaintiff filed a general denial for reply.

The case came on for trial before the judge and a jury on the 29th day of October, 1931.

The evidence of the plaintiff, consisting entirely of depositions, sustained all the allegations in the petition and refuted the allegations of positive defense in the answer.

The defendant Griffin, sworn as a witness on behalf of the defendants, admitted the signing of the contract, and the indebtedness, and testified in a general way to the effect that the plaintiff sent him certain stationery, order blanks, and "circular" books, in which retail price was stated, and that he was to sell and did sell at the retail prices stated in the stationery, etc., aside from corn salve, none of the bottles or boxes in which the merchandise was sold had the retail price stated or printed on the labels. The defendant testified that he paid the freight on all shipments, but when he placed the next order, he was credited by the amount of half of the freight, as a cash payment on the indebtedness for the subsequent shipment.

On cross-examination he testified that the catalogues referred to were intended for him to leave with his customers for their use in the event they decided to order some goods during his absence. That the retail price was shown in the book, but the wholesale price was not. He testified to the effect that the company furnished him literature in which the wholesale price was

fixed, and a retail price indicated, showing by the difference the "amount of profit you would make"; that he was expected to sell at the retail price indicated on the literature, although he did not understand that he was compelled to do so. He testified under cross-examination that he did not have any of this literature, that he had some, but his wife in cleaning up had destroyed it. He testified, further, that the company had one other agent that he knew of, operating in Oklahoma, in Grady county.

The defendant Griffin was the only witness offered on behalf of the defendants.

At the end of the testimony on behalf of the defendants, the plaintiff moved for an instructed verdict, which was overruled, and an exception allowed.

Thereupon, the court instructed the jury to the effect that if they found from the evidence that the retail prices of the goods sold by plaintiff to the defendant Griffin were fixed and controlled by the plaintiff, after the goods were delivered on board the carrier in Wisconsin, and that they directed or controlled the defendant in the retail prices of the goods, and required the defendant to sell the goods at the prices fixed by the plaintiff, then the contract was void and the plaintiff was not entitled to recover.

There was no exception to the instructions, and the jury returned a verdict for the plaintiff for $342.81, with interest at 6 per cent. from the 1st day of May, 1928, on which judgment was entered accordingly. The defendants filed motion for new trial, which was overruled and exception allowed, and time extended for making and serving case-made and fixing supersedeas bond, which was furnished by the defendant.

Thereafter, the case was filed in the Supreme Court by petition in error with case-made attached. The petition in error alleged three grounds:

First. Error in overruling motion for new trial.

Second. Error in rendering judgment for plaintiff for the amount sued for.

Third. Error in excluding competent and material evidence offered by the defendants, and exceptions.

The same assignments of error are presented in the brief of plaintiffs in error, but the matter is presented to this court upon one proposition only. To quote from the brief of plaintiffs in error:

"Error of the trial court is submitted under one proposition, that the verdict of the jury and the judgment of the court is contrary to the evidence in the case, and the judgment is contrary to law."

Plaintiffs in error rely solely upon the case of Brooks v. J. R. Watkins Medical Co., 81 Okla. 82, 196 P. 956, which case, plaintiffs in error state, is identical with the facts in the case at bar.

This assertion is erroneous. In that case, the court sustained a demurrer to the second, third, and fourth paragraphs of an amended answer filed by the defendants. The defendants excepted, and declined to plead further as to the defenses alleged in the paragraphs stricken. The second paragraph referred to set forth in substance that the plaintiff entered into a contract with the defendants and other agents which provided for the sale of the plaintiff's goods, wares, and merchandise by each agent, in a restricted and specified territory; that the said agents should devote their entire time to the sale of the plaintiff's goods, and to sell no other goods, and to sell same at regular retail prices indicated by plaintiff in the restricted territory referred to, and to make weekly reports of his business upon blanks furnished by plaintiff, and at the regular retail prices indicated by plaintiff in said weekly reports; that the plaintiff furnished to the defendant weekly report blanks, which specified and set out the retail prices of plaintiff's goods so sold by its agent, the defendant Brooks; that the defendant sold the said goods, wares, and merchandise at the prices indicated by plaintiff, which said prices were plainly stamped and printed thereon by the plaintiff and over its signature; that said prices the defendant therein was compelled to use in selling to the retail trade, and in making his reports to plaintiff.

The third paragraph of the answer referred to set forth in substance that plaintiff will sell to only one agent in each separate restricted territory, and that plaintiff has each state divided into districts for the purpose of doing business and selling its goods, and that by virtue of plaintiff's way of doing business, the conditions in the contract and requirements made of the agents, the plaintiff dictates and sets the retail prices of its goods, wares, and merchandise sold by it, and thus competition is eliminated, and prices artificially maintained throughout the various states of the Union, including Oklahoma.

For the purpose of the case at bar, it is not necessary to refer to the fourth paragraph of the amended answer.

The defendants in that case offered evidence which supported the allegations contained in the second and third paragraphs of the answer above referred to; this evidence included weekly report blanks, which had printed thereon the retail prices. In addition thereto, he offered in evidence a book furnished by the plaintiff which set forth the prices of the various articles, and the defendant Brooks testified that he sold the articles at the prices indicated therein.

The general manager of the plaintiff testified that he had made between 1,500 and 2,000 contracts with other salesmen throughout the United States, similar to the one sued on.

The defendants requested an instruction which embraced the theory of the defense tendered by the two paragraphs above referred to, and the evidence above mentioned. The instruction was refused. From the judgment, both parties appealed.

On appeal, the Supreme Court held that the trial court had committed error in sustaining the demurrer to the paragraphs of the amended answer above mentioned, and in refusing to give the requested instruction. It was held that it was for the jury, under proper instructions, taking the whole contract together, to say what was the intention of the parties, and should they believe that the contract entered into was for the purpose of evading the provisions of the Sherman Act, supra, and thereby fix the retail price of the goods which Brooks was to sell, then it would have been their duty to return a verdict in favor of the defendants.

A reading of the record of the case at bar shows that the facts involved are not the same as those involved in the case of Brooks v. Watkins Medical Co., above referred to. In the Brooks Case, the violation of the Sherman Act was clear and positive. Documentary evidence consisting of report blanks and books furnished by the plaintiff in that case, and showing the retail prices fixed, was produced. In the case at bar, the testimony of the defendant Griffin on this particular feature was of the most general nature, inconclusive and unconvincing. Not

a scrap of documentary evidence on this very important feature was offered. It is true that the witness accounted for the absence of such evidence by the statement that his wife had destroyed same in cleaning up. The plaintiff, by bringing suit, had subjected itself to the jurisdiction of the court, and could have been compelled to produce such evidence had proper measures been taken.

It is true that the contract between plaintiff in the case at bar and the defendant Griffin provided that the plaintiff promised and agreed to sell to the defendant Griffin goods, wares, and merchandise in such reasonable quantities as the defendant Griffin may from time to time require for sale in Kiowa county, Okla., but a reading of the cases decided by this court in which an alleged violation of the Sherman Act was involved shows that it was not a limiting of the territory in which the agent was authorized to sell, which was regarded as constituting a violation of that act, but it was fixing the price at which the agent could sell the goods which was regarded and construed as the decisive element.

The case at bar comes fully within the principle announced in the case of Gordon et al. v. W. T. Rawleigh Co., 117 Okla. 235, 245 P. 825.

The burden was upon the defendants to establish a defense, and the jury having correctly, we think, decided against them, and no error appearing in the record, the judgment should be, and hereby is, affirmed, at the cost of the appellants, and judgment is hereby rendered for plaintiff against the sureties, N. L. Walden and W. M. Kluck, on the supersedeas bond.

The Supreme Court acknowledges the aid of Attorneys G. C. Abernathy, Roscoe C. Arrington, and Chas. C. Dierker in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Abernathy and approved by Mr. Arrington and Mr. Dierker, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.